## STOCKLEY ET AL. *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 74. Argued November 20, 1922.—Decided January 2, 1923.

1. Section 7 of the Act of March 3, 1891, c. 561, 26 Stat. 1099, appli-
    cable to homestead and other entries, provides that, after the lapse
    of two years from the date of the issuance of "the receiver's re-
    ceipt upon the final entry," when no contest or protest against
    the validity of the entry shall be pending, the entryman shall be
    entitled to a patent conveying the land entered, and the same shall
    be issued to him. *Held:*

(*a*) That the limitation began to run when a homesteader submitted
    his final proofs, paid the fees and commissions then due, and ob-
    tained the receiver's receipt therefor, although the proofs were not
    passed upon and no register's certificate was issued. P. 537.

(*b*) The original meaning of the statute in this regard cannot be
    altered to suit an altered practice of the Land Department whereby
    examination of proofs and issuance of register's certificate are
    postponed when receiver's receipt issues, instead of issuing the
    certificate and the receipt together, as was customary when the
    statute was enacted. P. 538.

(*c*) The statute applies even though the receipt was issued contrary
    to the instructions of the Commissioner of the General Land Office.
    P. 541.

(*d*) When the period of the statute has run in favor of a homestead
    entry, the question whether the land was mineral in character is
    no longer open. P. 543.

2. Where an order of the President withdrew a body of public lands
    from all forms of appropriation "subject to existing valid claims";
    an existing preliminary homestead entry, attended by compliance
    with the requirements of the homestead law up to the time of the
    order, was within the exception, and when followed, after the
    withdrawal, by the issuance of a receiver's receipt upon final entry,
    and the lapse of two years thereafter, was protected under the
    Act of 1891, *supra*, from attack under a subsequent protest alleg-
    ing that the land entered was mineral. P. 543.

271 Fed. 632, reversed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which ordered that possession of a tract of land be restored to the United States with damages for oil and gas extracted from it.

*Mr. S. L. Herold,* with whom *Mr. R. L. Batts* and *Mr. D. Edward Greer* were on the brief, for appellants.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

The receipt issued in this case was not a receiver's receipt upon final entry within the meaning of the proviso in § 7 of the Act of March 3, 1891, 26 Stat. 1099.

This question was not involved in *Lane* v. *Hoglund,* 244 U. S. 174, and *Payne* v. *Newton,* 255 U. S. 438.

It is important to note the limitations imposed by the General Land Office on the register and receiver by instructions of December 15, 1908, allowing receipt of applications and proofs touching claims antedating the withdrawal, but forbidding receipt of the purchase money or issuance of final certificate, pending investigation, during which entries and proofs were to be suspended.

The proviso in § 7 can never become operative and the two-year period does not begin to run until after the register and receiver in fact pass upon the final proofs and issue a receiver's receipt, if the proof is found regular in all respects.

Obviously, the first inquiry is to ascertain the commonly accepted meaning of the words "receiver's receipt" when Congress passed the Act of March 3, 1891, and the prevailing practice of the Land Office at that time in the issuance of patents.

The duties of the register and receiver are prescribed by statute and regulations, and call for the exercise of judgment. Circular of October 21, 1878, Copp's Pub. Land Laws, 1415; Instruction September 17, 1883, 2

L. D. 199.  This Court has recognized that they must exercise judgment and discretion.  In *Parsons* v. *Venzke*, 164 U. S. 89, 92, it is said: "Whenever the local land officers approve the evidences of settlement and improvement and receive the cash price they issue a receiver's receipt."

Curiously enough, the homestead laws make no specific provisions for the issuance of a receiver's receipt, nor do they define its effect.  The language of Rev. Stats. §§ 2291, 2238, points to the fact that the certificate (and not the receiver's receipt) is the basis upon which patent issues.  And this at once suggests that when Congress used the words "receiver's receipt upon the final entry," in the proviso in § 7 of the Act of 1891, it did so upon the supposition that a receiver's receipt was a receipt for the purchase price which was issued simultaneously with the certificate of entry.  This, it would seem, was the prevailing practice.  Circular October 1, 1880, Copp's Pub. Land Laws, 247, 292.  The courts not infrequently use the terms "receiver's receipt" and "certificate of entry" as equivalents.  Receiver's receipt: *Parsons* v. *Venzke, supra; United States* v. *Detroit Lumber Co.,* 200 U. S. 321.  Certificate of entry: *Witherspoon* v. *Duncan,* 4 Wall. 210; *Guaranty Savings Bank* v. *Bladow,* 176 U. S. 448.

Two years before the passage of the Act of 1891, Congress used the words "receiver's receipt" as denoting a receipt issued after the final proofs have been examined and approved, and as representing the last act to be done before sending the papers to Washington for patent.  Act of March 2, 1889, § 6, 25 Stat. 854.

The receipt upon which Stockley relies was issued without either the register or the receiver passing upon the final proofs.

The similarity between a receiver's receipt and a certificate on final entry is strikingly shown by the very section under consideration.

It is of course well settled that when the full equitable title passes, the public lands become subject to state taxation; but until this occurs, the States are powerless to tax. Under the circumstances disclosed by this record, the lands never have been subject to state taxation. *Witherspoon* v. *Duncan,* 4 Wall. 210; *Wisconsin Central R. R. Co.* v. *Price County,* 133 U. S. 496; *Bothwell* v. *Bingham County,* 237 U. S. 642.

The oral testimony shows that at the time the Act of 1891 was passed, a receiver's receipt was never issued until the final proofs had been examined and approved. On July 1, 1908, a radical change in this practice took place.

The rules under which the receipt in question was issued plainly show that it is not to be regarded as a final receipt.

The difference in the form of a receiver's receipt in vogue at the time the Act of 1891 was passed, and the receipt issued to Stockley, emphasizes the radical difference in the nature of the two.

The Land Department has given the act in question an administrative interpretation in harmony with our contention. 29 L. D. 539; 44 L. D. 115; 46 L. D. 496; 47 L. D. 135.

Whether the Commissioner had the power to issue the instructions of December 15, 1908, is a matter of no moment. He did issue them, and as a result the register and the receiver were forbidden to pass upon the final proofs. The two-year period begins to run, not from the date when the receiver's receipt on final entry should have been issued, but from the date of its actual issuance. If the register and the receiver should of their own volition refuse to take any action until compelled by mandamus, obviously the two-year period would begin to run not from the time the receipt on final entry should have issued but from the time it is issued in obedience to the writ.

Mr. Justice Sutherland delivered the opinion of the Court.

This is a suit in equity brought by the United States, as plaintiff, against the appellants, as defendants, by which a decree was sought adjudging the plaintiff to be the owner of a tract of land in the Parish of Caddo, Louisiana, enjoining all interference therewith, and requiring the defendants to account for the value of oil and gas extracted by them therefrom.

The United States District Court for the Western District of Louisiana, upon the report of a master, found for the plaintiff and entered a decree in accordance with the prayer of the bill ordering a restoration of possession and awarding damages against some of the defendants, including Stockley, for about $62,000.

The case comes to this Court by appeal from the decree of the Circuit Court of Appeals affirming the decree of the District Court. 271 Fed. 632.

The defendants denied plaintiff's title and alleged that the land was the property of the defendant Stockley by virtue of his compliance with the homestead laws of the United States.

The conceded facts are that in 1897 Stockley took possession of the land and on November 13, 1905, made a preliminary entry thereof as a homestead. He complied with the provisions of the Homestead laws, submitted final proof, including the required non-mineral affidavit, paid the commissions and fees then due, and on January 16, 1909, obtained the receiver's receipt therefor. Prior to that time, viz, on December 15, 1908, a large body of public lands, embracing within its boundaries the land in question, was withdrawn by an order of the President of the United States from all forms of appropriation. The withdrawal order was expressly made " subject to existing valid claims." The receiver's receipt, omitting unnecessary matter, is in the following words:

" Received of Thomas J. Stockley  .  .  .  the sum of Three Dollars and One Cents, in ·connection with Hd. Final, Serial 0188, for: [lands described] 71.25 acres.  .  ."

On March 17, 1910, Stockley leased the property in question to the defendant the Gulf Refining Company, which company subsequently drilled wells and developed oil.   The rights of the other defendants are wholly dependent upon the title asserted on behalf of Stockley.

On July 16, 1910, after the report of a special agent confirming Stockley's claim of residence upon and cultivation and improvement of the lands, the Commissioner of the General Land Office ordered the case " clear-listed and closed as to the Field Service Division."   Subsequently, and more than three years after the issuance of the receiver's receipt, viz., on February 27, 1912, a contest was ordered by the Commissioner of the General Land Office before the local register and receiver upon the charge that the land was mineral in character, being chiefly valuable for oil and gas, and that when Stockley made his final proof he knew or, as an ordinarily prudent man, should have known this fact.   After a hearing, the register and receiver decided in favor of Stockley, but the Commissioner of the General Land Office reversed the decision and ordered the entry canceled.   The Secretary of the Interior affirmed the Commissioner with a modification allowing Stockley to obtain a patent for the surface only, under the provisions of the Act of July 17, 1914, c. 142, 38 Stat. 509.

The defendants contended that the Commissioner of the General Land Office and the Secretary of the Interior were without authority to entertain this contest because prior thereto full equitable title had vested in Stockley and he had become entitled to a patent by virtue of the provisions of § 7 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099.   That section, so far as necessary to be stated, provides:

" That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there ·shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him; but this proviso shall not be construed to require the delay of two years from the date of said entry before the issuing of a·patent therefor."

The court below rejected defendants' contention, holding that the receipt issued to Stockley was not a " receiver's receipt upon the final entry " for the reason that, in the view of that court, a final entry could not become effective until the issuance of the certificate of the register. In other words, it was the opinion of the lower court that in order to constitute a final entry within the meaning of the statute above quoted, there must be an adjudication upon the proofs and the issuance of a final certificate, evidencing an approval thereof. ·

We think the language of the statute does not justify this conclusion. It must be assumed that Congress was familiar with the operations and practice of the Land Department and knew the difference between a receiver's receipt and a register's certificate. These papers serve different purposes. One, as its name imports, acknowledges the receipt of the money paid. The other certifies to the payment and declares that the claimant on presentation of the certificate to the Commissioner of the General Land Office shall be entitled to a patent.

The evidence shows that prior to the passage of the statute, and thereafter until 1908, the practice was to issue receipt and certificate simultaneously upon the submission and acceptance of the final proof and payment of the fees and commissions. In 1908 this practice was changed, so that the receipt was issued upon the submis-

sion of the final proof and making of payment, while the certificate was issued upon approval of the proof and this might be at any time after the issuance of the receipt. The receiver and register act independently, the former alone being authorized to issue the receipt and the latter to sign the certificate. The receipt issued to Stockley was after submission of his proof and payment of all that he was required to pay under the law. No certificate was ever issued by the register.

It is contended by the Government that the receiver's receipt named in the statute should be restricted to a receipt issued simultaneously with the register's certificate after approval of final proofs, and that, after the change of 1908 in the practice of the Department, a receipt issued before such approval does not come within the meaning of the statute. Such a receipt, it is contended, obtains no validity as a " receiver's receipt upon the final entry " until after the proof has in fact been examined and approved.

We cannot accept this conception of the law. A change in the practice of the Land Department manifestly could not have the effect of altering the meaning of an act of Congress. What the act meant upon its passage, it continued to mean thereafter. The plain provision is that the period of limitation shall begin to run from the date of the " issuance of the receiver's receipt upon the final entry." There is no ambiguity in this language and, therefore, no room for construction. There is nothing to construe. The sole inquiry is whether the receipt issued to Stockley falls within the words of the statute. In *Chotard* v. *Pope,* 12 Wheat. 586, 588, this Court defined the term entry as meaning: " That act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim in the office of an officer known, in the legislation of several States, by the epithet of an entry-taker, and corresponding

very much in his functions with the registers of land-offices, under the acts of the United States." It was in this sense that the term "final entry" was used in this statute. Having submitted to the proper officials proof showing full compliance with the law, and having paid all the fees and commissions lawfully due, Stockley had done everything which the law required on his part and became entitled to the immediate issuance of the receiver's receipt, and this receipt was issued and delivered to him. No subsequent receipt was contemplated or required. From the date of the receipt the entry may be held open for the period of two years, during which time its validity may be contested. Thereafter the entryman is entitled to a patent and the express command of the statute is that "the same shall be issued to him." *Lane* v. *Hoglund*, 244 U. S. 174; *Payne* v. *Newton*, 255 U. S. 438.

That Stockley's acts constituted final entry is borne out by rulings of the Land Department. Thus in *Gilbert* v. *Spearing*, 4 L. D. 463, 466, Secretary Lamar said:

"When the homestead application, affidavit and legal fees are properly placed in the hands of the local land officers, and the land applied for is properly subject to entry, from that moment the right of entry is complete and in contemplation of law the land is entered."

See also *Iddings* v. *Burns*, 8 L. D. 224, 226.

We are not at liberty to add to or take from the language of the statute. When Congress has plainly described the instrument from whose date the statute begins to run as the "receipt upon the final entry," there is no warrant for construing it to mean only a receipt issued simultaneously with the certificate or one issued after the adjudication on the final proof, which might be—and in this instance was—postponed indefinitely. It was to avoid just such delays for an unreasonable length of time—that is, for more than two years—that the statute was enacted. *Lane* v. *Hoglund, supra,* and Land Depart-

ment decisions cited. The purpose and effect of the statute are clearly and accurately stated by the Commissioner of the General Land Office in Instructions of June 4, 1914, 43 L. D. 322, 323, in the course of which it is said:

" There is no doubt that Congress chose the date of the receiver's receipt rather than of the certificate of the register as controlling, for the reason that payment by the claimant marks the end of compliance by him with the requirements of law. It would be manifestly unjust to make the right to a patent dependent upon the administrative action of the register, subjecting it to such delays as are incident to the conduct of public business and over which the claimant has no control. Payment, of which the receiver's receipt is but evidence, is, therefore, the material circumstance that starts the running of the statute, inasmuch as a claimant is and always has been entitled to a receipt when payment is made."

It is urged, however, that in any event the receiver exceeded his authority in issuing the receipt, since the Commissioner of the General Land-Office, on December 15, 1908, had instructed the register and receiver, among other things, as follows:

" Applications, selections, entries, and proofs based upon selections, settlements, or rights initiated prior to the date of withdrawal may be received by you and allowed to proceed under the rules up to and including the submission of final proofs. You must not, however, in such cases receive the purchase money or issue final certificates of entry, but must suspend the entries and proofs pending investigation as to the validity of the claims with regard to the character of the land and compliance with the law in other respects."

These instructions were issued, as shown upon their face, in view of the Presidential withdrawal order of the same date. We suggest, without deciding, that, inasmuch as the withdrawal order was expressly made subject to

existing valid claims, and Stockley's claim was obviously existing and valid, this instruction of the Commissioner was itself without authority, since, as applied to Stockley, it was in conflict with the withdrawal order. This has nothing to do with the question as to whether the lands were, in fact, mineral in character, which is another and different matter dealt with later. However, Stockley, as already shown, did, in fact, make final entry and the receiver did, in fact, issue and deliver his receipt thereon. The case, therefore, falls within the terms of the statute and must be governed by it, unless the receipt be held for naught on the ground that it was issued contrary to the Commissioner's instructions. But the very object of the statute was to preclude inquiry upon that or any other matter, except as provided by the statute, after the expiration of two years from the date of the receiver's receipt. In *United States* v. *Winona & St. Peter R. R. Co.*, 165 U. S. 463, 476, this Court had under consideration § 8 of the same act (26 Stat. 1099), limiting the time within which suits by the United States might be brought to annul patents. That section, it was said, recognizes " that when its proper officers, acting in the ordinary course of their duties, have conveyed away lands which belonged to the Government, such conveyances should, after the lapse of a prescribed time, be conclusive against the Government, and this notwithstanding any errors, irregularities or improper action of its officers therein." It was said further: " Under the benign influence of this statute it would matter not what the mistake or error of the land department was, what the frauds and misrepresentations of the patentee were, the patent would become conclusive as a transfer of the title, providing only that the land was public land of the United States and open to sale and conveyance through the land department."

In *United States* v. *Chandler-Dunbar Water Power Co.*, 209 U. S. 447, 450, this section of the act was again under

consideration. A patent was attacked as void for the alleged reason that the land which it purported to convey had been reserved for public purposes, and upon that ground the application of the statute was denied, but this Court said:

"It is said that the instrument was void and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents it would be almost or quite without use."

To hold that the receipt here under consideration falls outside the terms of the statute would be to defeat the purpose of the statute and perpetuate the mischief which it sought to destroy. Prior to the decision in the case of *Jacob A. Harris,* 42 L. D. 611, 614 (quoted with approval in *Lane* v. *Hoglund, supra*), it had been held that the statute did not affect the conduct or action of the Land Department in taking up and disposing of final proof of entrymen after the lapse of the two-year period (*In re Traganza,* 40 L. D. 300), but this view was sharply challenged and overruled in the *Harris Case,* where it was said:

"Passed, primarily, to rectify a past and to prevent future abuses of the departmental power to suspend entries, the proviso is robbed of its essential purpose and practically repealed by the decision in the Traganza case."

The effective character of the receiver's receipt being established, the question, after the lapse of the two-year period, as to whether the land was mineral bearing, was no longer open. Inquiry upon that ground was then foreclosed, along with all others. *Payne* v. *Newton, supra.*

The bar of the statute likewise prevails, notwithstanding the executive withdrawal of December 15, 1908. The validity of that order is, of course, settled by the decision

in *United States* v. *Midwest Oil Co.*, 236 U. S. 459, but, as already stated, there is excepted from the operation of the order " existing valid claims." Obviously this means something less than a vested right, such as would follow from a completed final entry, since such a right would require no exception to insure its preservation. The purpose of the exception evidently was to save from the operation of the order claims which had been lawfully initiated and which, upon full compliance with the land laws, would ripen into a title. The effect of a preliminary homestead entry is to confer upon the entryman an exclusive right of possession, which continues so long as the entryman complies in good faith with the requirements of the homestead law. *Stearns* v. *United States,* 152 Fed. 900, 906; *Peyton* v. *Desmond,* 129 Fed. 1, 12. Since it is conceded that Stockley made such an entry in 1905 and his compliance with the requirements of the homestead law prior to the withdrawal order is not questioned, it follows that he had, when that order was issued, an existing valid claim, within the meaning of the exception. The action of the Commissioner of the General Land Office, therefore, in directing a contest against Stockley's entry three years after the issuance to him of the receiver's receipt was unauthorized and void.

> *The decree of the Circuit Court of Appeals is reversed and the cause remanded to the District Court with directions to dismiss the bill of complaint.*