UNITED STATES v. ONE CHEVROLET
AUTOMOBILE.

SAME v. ONE CHEVROLET SEDAN.

Nos. 2658, 2660.

District Court, D. Nevada.

May 26, 1936.

E. P. Carville, U. S. Atty., of Reno, Nev., for the United States.

George A. Montrose, of Gardnerville, Nev., and George L. Vargas, of Reno, Nev., for defendants.

NORCROSS, District Judge.

The above-entitled cases are libels filed against two automobiles owned respectively by two Indians for having been used in transporting intoxicating liquor in and upon what is known and so designated by federal statute as the Reno Indian Colony. As the cases present a similar question of fact and the same questions of law, they were consolidated for trial. The question for determination is whether the said Reno Indian Colony is "Indian Country" and hence subject to the penal laws applicable thereto. 25 U.S.C.A. § 247. If it may not be so classified then the proceedings must be dismissed and the property seized returned to the lawful owners thereof.

The said Reno Indian Colony consists of a tract of land slightly less than thirty acres lying within approximately a half mile east of the limits of the city of Reno, and between that city and the city of Sparks about a mile further to the east on the main line of the Southern Pacific Railroad. Twenty acres of the tract were purchased from the then owners in the year 1917 for a consideration of $6,000, which consideration was paid in equal parts from two items contained in the act making appropriations for the Interior Department for that year (39 Stat. 123, 143), reading:

"For the purpose of procuring home and farm sites, with adequate water rights, and providing agricultural equipment and instruction and other necessary supplies for the nonreservation Indians in the State of Nevada, $15,000: * * *

"For the purchase of land and water rights for the Washoe Tribe of Indians, the title to which is to be held in the United States for the benefit of said Indians, $10,000, to be immediately available; for the support and civilization of said Indians, $5,000; in all, $15,000." Section 13.

The remainder of the tract was purchased ten years later in pursuance of the provisions of a special act of Congress, approved May 10, 1926 (44 Stat. 496), reading: "Be it enacted * * * That the Secretary of the Interior * * * purchase a certain described tract of land containing approximately eight and forty-two hundredths acres, situated in section 7,

454

township 19 north, range 20 east, * * : Provided, That the said land when purchased shall be added to and become a part of the site for the Reno Indian colony heretofore purchased by the Government: Provided further, That the sum of $4,300 is hereby authorized to be appropriated, * * to be used in purchasing the tract of land hereinbefore described."

It is conceded that the state of Nevada by special act never relinquished jurisdiction over the land in question, nor was any procedure taken to comply with the general law (Nevada Comp.Laws, § 2895) respecting relinquishment of jurisdiction. Title to the land in question is in the United States. As said in Surplus Trading Co. v. Cook, 281 U.S. 647, 650, 50 S.Ct. 455, 456, 74 L.Ed. 1091: "It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal."

The contention made on behalf of the government is that the said Reno Indian Colony is in effect an Indian reservation and hence should be regarded as Indian country, as such reservations are generally so regarded. No authority is cited expressly holding that land similarly acquired by purchase and set apart for the benefit of Indian wards of the government should be so classified.

The first use of the expression Indian country appears in an Act of Congress of July 22, 1790, 1 Stat. 137, dealing with the subject of trade and intercourse. See American Fur Co. v. United States, 2 Pet. 358, 368, 7 L.Ed. 450. The statute now in force had its origin in the Act of Congress of June 30, 1834, 4 Stat. 729. That statute defined the term Indian country to be: "All that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and, also, that part of the United States east of the Mississippi river, and not within any state to which the Indian title has not been extinguished." Section 1.

When the Revised Statutes were adopted by the Congress in 1873, the definition of Indian country appearing in the said act of 1834 was omitted therefrom. Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 458, 57 L.Ed. 820, Ann.Cas.1913E, 710. Thereafter the courts without the aid of such controlling definition were called upon to determine whether in particular cases the laws relating to Indian country had application. One of the earliest cases to deal with that situation was the case of United States v. Leathers, 26 Fed.Cas. 897, No. 15,581, 6 Sawy. 17, in this court. The opinion of Judge Hillyer, of date July 1, 1879, deals with the situation at length, holding that the Pyramid Lake Indian Reservation was not only a lawfully established reservation, but was Indian country within the meaning of the statutes relating thereto. The opinion contains the following statement: "The policy has been to separate the Indian tribes from the rest of the people, and to set apart for their exclusive use specific portions of the public domain. The statutes cited show that 'Indian country' is the term used generally to describe country in the occupation of the Indians, to which their title or right of occupancy—a right always hitherto recognized by the United States—has not been extinguished."

It is now well settled that "a tract of land that, being a part of the public domain, is lawfully set apart as an Indian reservation," is "Indian country." Donnelly v. United States, supra. It is also well settled that where land once Indian country is withdrawn therefrom and the Indian title thereto surrendered such land ceases to be Indian country. Clairmont v. United States, 225 U.S. 551, 32 S.Ct. 787, 56 L.Ed. 1201; Dick v. United States, 208 U.S. 340, 28 S.Ct. 399, 52 L.Ed. 520. It is also settled law that where land embraced within the Indian country is conveyed by the Indians or the title thereto surrendered subject to a condition that for a prescribed period of time such land so surrendered or conveyed shall be subject to the condition that the federal laws relating to the possession or transportation of intoxicating liquor thereon shall continue to apply, that such land for such time remains subject to such laws. Clairmont v. United States, supra; Dick v. United States, 208 U.S. 340, 28 S.Ct. 399, 52 L.Ed. 520; United States v. Forty-three Gallons of Whiskey, 108 U.S. 491, 2 S.Ct. 906, 27 L.Ed. 803. No such question, however, is involved in this case.

As the Indian has advanced in civilization it has apparently been the policy of the Department of Indian Affairs to ac-

quire tracts of land immediately adjacent to cities and towns upon which Indians could reside and have the advantages of closer relations with the white citizens. Indians residing upon such tracts have the advantage of the public school system, and there is also afforded greater opportunity for gainful employment. Such tracts of land have never been regarded as Indian reservations. Indian reservations are generally if not universally so designated. To distinguish its purpose the tract here in question was designated Reno Indian Colony, and so recognized by that name by federal statute. Tracts of land acquired and set apart for a particular purpose of Indian welfare are not a reservation, or otherwise to be regarded as Indian country in the sense that expression is used in the statute. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; United States v. Wurtzbarger (D.C.) 276 F. 753; United States v. Myers (C.C.A.) 206 F. 387; Benson v. United States (C.C.) 44 F. 178.

It does not follow, of course, that where an offense involves merely an act respecting an Indian ward that such offense is affected by the fact that such ward is within or without the Indian country. The cases here under consideration, however, have their basis on the fact that the place must be Indian country, otherwise the act is not an offense.

It is the conclusion of the court that the said Reno Indian Colony is not Indian country within the meaning of that expression as used in the federal statutes. The libels should be, and hereby are, dismissed, and the property seized directed to be restored to the lawful owners thereof.