**UNITED STATES of America,
Plaintiff,**

**v.**

**5,677.94 ACRES OF LAND, MORE OR LESS, OF THE CROW RESERVATION, STATE OF MONTANA; The Crow Tribe of Indians of Montana; William A. Wall, Chairman, James Real Bird, Vice Chairman, and Phillip Beaumont, Secretary, Crow Tribal Council, et al. and Unknown Owners, Defendants.**

**Civ. No. 1825.**

United States District Court
D. Montana, Billings Division.

Jan. 8, 1957.

Krest Cyr, U. S. Atty., Butte, Mont., Dale F. Galles, Asst. U. S. Atty., Billings, Mont., Michael J. O'Connell and Frank M. Kerr, Asst. U. S. Attys., Butte, Mont., for plaintiff.

Burton K. Wheeler, Washington, D. C., Bert W. Kronmiller, Hardin, Mont., for defendants.

PRAY, Judge.

The question before the court at this time in the above-entitled cause is on the motion of defendants to dismiss the complaint filed herein upon the grounds and for the reasons set forth in the answer to said complaint, which is in substance to the effect that of the approximately 45,000 acres sought to be made available for irrigation under the condemnation proceedings, about 21,000 acres consists of lands owned by members of the Crow Tribe of Indians, allotted to said Indians pursuant to the provisions of the Act of June 3rd, 1920 (41 Stat. 738), and that all of the aforesaid Indian lands sought to be irrigated are within the boundaries of the Crow Indian Reservation of Montana, and that said lands are covered by the treaties and laws recited in the answer, and that the consent of the Tribal Council of the Crow Tribe of Indians has never at any time been duly obtained, or otherwise obtained, by the United States of America as the law requires, and that it therefore has no authority to take the property set forth in the answer under the power of eminent domain.

It seems to be understood by both sides to this controversy that the law provides that no additional irrigation systems shall be established or constructed by the Government for the irrigation of Indian lands on the Crow Indian Reservation unless and until the consent of the Tribal Council thereto has been duly obtained, and in that same respect, that no further construction work shall be undertaken.

If the able arguments presented to the court by counsel for the defendants are to prevail, then, of course, the court is without jurisdiction to entertain this action.

It appears from the complaint that this action is brought by plaintiff on request of the Solicitor of the Department of the Interior for the taking of property under the power of eminent domain and for ascertaining and awarding just compensation to owners and parties in interest, and that "The public use for which said lands and interests are taken is the right and privilege to lay out, construct, inspect, operate and maintain a dam and reservoir with appurtenant facilities in furtherance of the full conservation, control and use of the water resources of the Missouri River Basin, including the right of ingress and egress to and from said lands for any and all purposes necessary and incident to the exercise by the United States, its successors and assigns, and the public, of the rights to be acquired, in connection with the Yellowtail Dam and Reservoir, Missouri River Basin Project."

Then follows a description of the property to be taken and the estate to be taken in the different parcels of land described. A large acreage of Crow Tribal lands is alleged to be needed for the public uses and purposes set forth for the aforesaid dam site and reservoir, which is designed to accomplish the several public uses stated, such as helping avert and control flood waters, generate electric power, control silt and abate water polution, provide recreational areas, make water available for irrigation, and for municipal and industrial uses.

In the complaint is set forth the basic authority upon which the taking is predicated and, in brief, the primary object here being to construct, operate and maintain a dam and reservoir, with appurtenant facilities, as a public use.

It is stated that the Yellowtail Dam was an important objective in the early stages of the Missouri River Basin Project, and it was known then that Indian lands would have to be flooded as appears from various Senate documents referred to, and that this Project was reaffirmed. 60 Stat. 163, 641, 653.

Preconstruction work on the Yellowtail Dam appears to have been provided for and funds appropriated therefor in appropriation acts sponsored by the Interior Department for 1947, 1948, 1949,

1950 and 1951, and many hearings were held before Senate and House Committees in respect to such appropriations. Under the Flood Control Act reclamation and power development were to be under the direction of The Secretary of the Interior and were to be governed by the Federal Reclamation Laws of 1902, and Section seven thereof authorized the Secretary to acquire property by purchase or condemnation.

Senate Report 700 (84th Congress, 1st Session) is referred to, in which among others matters the following appeared: "Hardin Unit (Yellowtail Dam) Montana—The Committee recommends an allotment of $4 million for the initiation of construction of the Yellowtail Dam, the principal feature of the Hardin unit. The total cost of the unit is approximately $95 million. The unit includes a powerplant with an installed capacity of 200,000 kilowatts. Of the total estimated cost, approximately $5 million is allocated to non-reimbursable functions." "The Yellowtail Dam and Reservoir will occupy Crow Indian lands and the Secretary should proceed, under whatever statutory authority may be available to him, immediately to secure the rights-of-way necessary for the dam, reservoir, appurtenances, and associated works. However, it is not the committee's intent that the immediate securing and occupancy of the necessary rights-of-way shall operate to deprive the Indians of fair compensation for their lands. The committee, therefore, directs the Secretary to negotiate with the Indians on the question of compensations. If a satisfactory agreement is reached, the committee expects the Secretary to send forward through the Bureau of the Budget, a supplemental estimate in the amount of the compensation agreed upon. In the event these negotiations fail and it is found that there is no method by which a judicial determination of the question can be had, the Secretary is directed to present to the appropriate committees of the Congress legislation which will assure the Indians a judicial determination of just compensation."

It seems that this recommendation was adopted by the Conference Committee (Page 5, House (Conference) Report 1085, 84th Cong., 1st Sess.). Following this recommendation Congress appropriated the $4,000,000 for the initiation of construction work on the Yellowtail dam. (Public Works Appropriation Bill, 1956 (69 Stat. 354, 357).

Also the Act of August 1, 1888 (25 Stat. 357, 40 U.S.C.A. § 257, is referred to as furnishing basic authority for condemnation.

" * * * The appropriation of the money already expended and authorized to be further expended argues that the project and the acquisition of land in furtherance of it has received the sanction of Congress * * *." United States v. 458.95 Acres of Land, D.C., 22 F.Supp. 1017, 1020.

It has been held that if it appears that no other act of Congress vests power to condemn property for a particular purpose an applicable appropriation Act may be looked to as the source of such power. United States v. Certain Real Estate, 6 Cir., 217 F.2d 920, 925; Polson Logging Co. v. United States, 9 Cir., 160 F.2d 712, 714; United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708.

The Blackfeet Indian Reservation case was cited, where land was being acquired for the St. Mary's reservoir under the Reclamation Act of 1902 (32 Stat. 388); in that case, Henkel v. United States, 237 U.S. 43, 35 S.Ct. 536, 59 L.Ed. 831, it was contended that no act general in its character would give authority to take lands within an Indian reservation for any purpose; the court held, among other things, that the Secretary of the Interior could acquire such rights either by purchase or condemnation.

The court has considered the claim of defendants that the Flood Control Act of 1944 (58 Stat. 887) shows a Congressional intent that Indian Laws referred to shall apply to the Missouri River Basin Project and not the Reclamation Act above cited; the court does not be-

lieve that such argument is tenable or available here to defeat the several public purposes for which the Yellowtail dam and reservoir is being built.

The general condemnation Act of 1888 (25 Stat. 357) considered in connection with the appropriation acts above referred to, in the court's opinion furnish ample authority to sustain the action of the Government herein. Hanson Lumber Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809; United States v. Certain Real Estate, 6 Cir., 217 F.2d 920, 925; United States v. 458.95 Acres, D.C., 22 F.Supp. 1017, 1020.

The court should refer to another point raised in support of this action relating to the power of the Government to acquire for public purposes such property as it may deem necessary, and wherein such power has been held to be of an executive nature, and furthermore that the extent and exercise of such power generally is not of judicial concern. It was held in Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 221, 47 L.Ed. 299, 306: "Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government * * *."

In the Barnidge case (Barnidge v. United States), 8 Cir., 101 F.2d 295, 299, having reference to condemnation proceedings it was said: "It is contended by appellant that the lands sought to be taken are not necessary for the effectuation of the purposes of the Historic Sites Act [16 U.S.C.A. § 461 et seq.], but the Secretary has determined that it is necessary and expedient to acquire these lands, and the duty of determining that fact was vested in him and not in the courts. When Congress delegates to an administrative officer the power to determine necessity, his determination, with exceptions not here important, is not subject to judicial review."

Under 40 U.S.C.A. § 257, herein cited, general authority is granted any officer of the United States who is authorized to acquire real property for any public use, to "acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so * * *." And it appears that the Secretary of the Interior and the Solicitor of that Department both have such authority conferred upon them. (13 Fed.Reg. 3174.) Many other authorities could be cited to sustain the position of the Government in this case, but to add more would in the court's view unnecessarily extend this decision. However, the court will refer to another authority sustaining the position of the Government herein. Mr. Clarence A. Davis, Solicitor for the Department of the Interior, on February 3, 1954, rendered a written opinion to the Secretary of the Interior on the questions now before the court for determination, in which he stated: "That an extensive examination of this entire situation has been made by this Department and the following conclusions arrived at:" Then follows what the court considers a well reasoned argument sustaining the authority of the Department to bring this condemnation action and proceed with the construction of the Yellowtail dam and reservoir. Copies of this opinion have been presented to the court by counsel for both parties to this action. Irrespective of whether the reasoning and conclusions of the court and the solicitor are right or wrong, in litigation of this importance, involving many persons and a variety of interests, all of the material problems here will eventually be determined by a higher tribunal.

The court has endeavored carefully to consider the pleadings, the factual situation, the voluminous briefs and statements and oral arguments of counsel for the respective parties, presented in said cause, and is now of the opinion that there is ample authority for the taking

of the lands aforesaid and for the construction of the Yellowtail dam and reservoir for the public uses specified. Wherefore, being duly advised, and good cause appearing therefor, the court believes that the motion to dismiss the complaint herein should be overruled and denied, and such is the order of the court herein. Exceptions allowed counsel.