The SENECA NATION OF INDIANS, Plaintiffs,

v.

Wilber M. BRUCKER, Secretary of the Army, et al., Defendants.

Civ. No. 2202-57.

United States District Court District of Columbia.

March 24, 1958.

Edward E. O'Neill, and C. Walter Harris, Washington, D. C., for plaintiff.

Perry W. Morton and Ralph S. Boyd, Dept. of Justice, Washington, D. C., for defendants.

**McGARRAGHY, District Judge.**

This is an action to enjoin the Secretary of the Army and the Chief of the United States Army Corps of Engineers from commencing the construction of a flood control dam intended, primarily, for the protection of Pittsburgh, in the Allegheny River in the vicinity of Kinzua, Pennsylvania, the project being officially designated as "the Allegheny Reservoir Project" which is approximately twelve and one-half miles downstream from the Pennsylvania-New York border.

Within the area of the project is part of a reservation which was the subject of a treaty between the Seneca Nation, as a member of the Iriquois Confederacy, and the Government of the United States, executed on November 11, 1794, 7 Stat. 44, and commonly known as the "Pickering Treaty" by which the United States covenanted and acknowledged " * * * all the land within the aforementioned boundaries, to be the property of the Seneka Nation; and the United States will never claim the same, nor disturb the Seneka Nation, nor any of the Six Nations, or of their Indian friends residing thereon and united with them, in the free use and enjoyment thereof; but it shall remain theirs, until they choose to sell the same to the people of the United States, who have the right to purchase."

■ The plaintiff contends, and the defendants concede, that treaties with Indians are to be construed more favorably to the Indians and according to the way the Indians understood them when they were made as far as the language in the treaties will fairly permit.

■ On the other hand, the defendants contend, and the plaintiff concedes, that the power of eminent domain of the United States can be exercised over Indian tribal lands regardless of treaty provisions. Cherokee Nation v. Southern Kansas Railway Company, 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295; Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299.

To summarize the plaintiff's contention, it concludes its brief in the following language:

"The Seneca Nation does not claim that Congress is without authority to abrogate a treaty outstanding with the United States Government— whether it be a treaty consummated one hundred and sixty-three years ago to secure peace and the well being of this country, or whether it be one consummated within the past five or ten years to likewise secure peace and well being. The Seneca Nation *does* claim that the rights covenanted under such a treaty— especially one with an Indian tribe— cannot be destroyed by implication, innuendo, or unauthorized acts of the Executive. To destroy such rights Congress must specifically so say. This it has failed to do in the instant case."

■ The plaintiff contends that general acts of Congress do not affect Indian Treaty rights and further, that they do not nullify previous special acts whether in the form of legislative enactments or treaties. Many court decisions are cited by the plaintiff in support of these contentions but a review of the authorities indicates that the test is not whether the Congress has acted by general legislation or special acts, but whether, whatever the form of the legislation, Congress has manifested an intention to include Indian treaty rights in the legislation.

As was pointed out in Elk v. Wilkins, 112 U.S. 94, 100, 5 S.Ct. 41, 44, 28 L.Ed. 643, "General acts of congress did not apply to Indians, unless so expressed as to clearly manifest an intention to include them."

The Court is of the opinion that general legislation is sufficient to override the provisions of an Indian treaty where the intent of Congress to do so is clear. United States v. Forty-Three Gallons of Whiskey, 108 U.S. 491, 496, 2 S.Ct. 906, 27 L.Ed. 803; Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353; Superintendent of Five Civilized Tribes, etc. v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517; Henkel v. Unit-

**582**

ed States, 237 U.S. 43, 35 S.Ct. 536, 59 L.Ed. 831.

The ruling of the Supreme Court in Spalding v. Chandler, 160 U.S. 394, 406, 16 S.Ct. 360, 40 L.Ed. 469, in the opinion of the Court, is dispositive of the plaintiff's contentions in this case.

■ Having concluded that Congress may by general legislation authorize the acts which are the subject of the plaintiff's complaint, the Court is of the opinion that a review of the legislative history leading to and including the Appropriation Act of August 26, 1957, 71 Stat. 416 which appropriated and earmarked one million dollars for the construction of the Allegheny Reservoir Project manifested a clear Congressional intention to authorize the construction of the project. United States v. Great Falls Mfg. Co., 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846; United States v. Threlkeld, 10 Cir., 72 F.2d 464; Ryan v. Chicago B. & Q. R. Co., 7 Cir., 59 F.2d 137.

Since it is the view of the Court that the project is authorized by the appropriation, the plaintiff's application for injunction must be denied, Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; Crozier v. Fried Krupp Aktiengesellschaft, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771, and the plaintiff must seek relief by its remedies at law. In this connection, there is no contention that the defendants intend to flood any of the plaintiff's lands without first acquiring the right to do so by purchase or condemnation. In fact, there is a proceeding in the United States District Court for the Western District of New York in United States v. 21,250 Acres of Land, Etc., 161 F.Supp. 376, in which that Court rejected the same claims of the plaintiff as have been advanced here when the plaintiff moved to vacate and set aside an order for delivery of possession, which motion was denied.

The petition for injunction will be dismissed and counsel for defendants will submit proposed findings of fact, conclusions of law, and judgment.