**UNITED STATES of America, Plaintiff,**

v.

**40 ACRES OF LAND, SITUATE IN NENANA RECORDING PRECINCT, FOURTH DIVISION, TERRITORY OF ALASKA, and Dan T. Kennedy, et al., Defendants.**

**No. A–12883.**

District Court, Alaska, Third Division, Nome.

June 13, 1958.

William T. Plummer, U. S. Atty., Donald A. Burr, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

Davis, Hughes & Thorsness, Anchorage, Alaska, for defendants.

HODGE, District Judge.

Plaintiff has moved the undersigned judge of the above entitled court to reconsider his opinion filed herein on March 10, 1958, wherein the Court sustained a motion of the defendant Dan T. Kennedy to dismiss plaintiff's complaint (D.C., 160 F.Supp. 30). The motion to reconsider is granted and the Court has considered the matter anew upon briefs submitted by both parties.

Plaintiff relies in support of its principal contention that the authority for the taking of the land in question is evidenced by the Interior Department Appropriation Act of 1951, 65 Stat. 248 and the Act of August 1, 1888 (40 U.S.C.A. Sec. 257), upon four decisions other than the cases previously considered in such

opinion. The case of United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209, reversing the Circuit Court of Appeals, 8 Cir., 151 F.2d 881, following retrial of case cited in my original opinion, 8 Cir., 135 F.2d 196, involves a proceeding instituted by the United States to condemn land as a site for a postoffice, in reliance upon several Federal statutes, including the Public Buildings Act of May 25, 1926 (40 U.S.C.A. § 341), and the General Condemnation Act above referred to (40 U.S.C.A. § 257). The Public Buildings Act gave specific authority to the Secretary of the Treasury (later the Federal Works Administrator) "to acquire by purchase, condemnation or otherwise, such sites * * * as he may deem necessary * * *." The Court holds that the United States has inherent power to appropriate land determined necessary for the public use, when such power is exercised by Congress. To quote from the opinion (329 U.S. at page 240, 67 S.Ct. at page 256):

> "The considerations that made it appropriate for the Constitution to declare that the Constitution of the United States, and the laws of the United States made in pursuance thereof, shall be the supreme law of the land make it appropriate to recognize that the power of eminent domain, when exercised by Congress within its constitutional powers, is equally supreme."

> "We find in the broad terms of the Public Buildings Act authority for the designated officials to select the site they did. We find, in both Acts, authority for them to acquire by condemnation the site thus lawfully selected." [1]

The right of the United States to condemn land is conceded by the defendant, and is certainly not denied by this Court, but I agree with the defendant's contention that the question here is whether the United States, through Congress, has exercised that right.

The case of United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224, does not hold as contended by plaintiff that one Congress cannot preclude another from exercising the power of eminent domain, but holds rather that such power is one which even the State Legislature cannot surrender; and relates to the question of a state divesting itself of such governmental authority by contract. This case is clearly not applicable here.

The recent decision of the District Court for the District of Columbia on March 24, 1958, of Seneca Nation of Indians v. Brucker, 162 F.Supp. 580, 582, holds that Congress may, by general legislation, override the provisions of an Indian treaty where the intent of Congress to do so is clear, and that an appropriation act which appropriated money for the construction of the Allegheny Reservoir Project "manifested a clear Congressional intention to authorize the construction of the project"; and that since the project was specifically authorized by the appropriation, the right to condemn land for such purpose must be upheld. Similarly, the case of the United States v. 5,677.94 Acres of Land, etc., of Crow Reservation, D.C., 152 F.Supp. 861, holds that an appropriation act making specific appropriations for preconstruction work on the Yellowtail Dam, furnishes sufficient authority for taking of the land within the boundaries of the Indian reservation, when considered with the General Condemnation Act. These decisions deal with appropriations for a specific project, relying upon authority of the Threlkeld (United States v. Threlkeld, 10 Cir., 72 F.2d 464) and Polson (Polson Logging Co. v. U. S., 9 Cir., 160 F.2d

---

1. To the same effect see United States v. Fisk Building, D.C., 99 F.Supp. 592, 593, wherein the Court said "The power of eminent domain is inherent in the Government as an aspect of sovereignty, subject to the requirement of the Fifth Amendment that just compensation be paid. Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809. However, the power to condemn may be exercised only when explicitly authorized by statute," citing the Carmack case (Carmack v. U. S., 8 Cir., 135 F.2d 196).

712) cases cited in my original opinion, and are likewise not applicable here.

Plaintiff also cites the legislative history of the Interior Department Appropriation Act for 1951 as indicating the intent of Congress to provide for the acquisition of privately owned land in the Mount McKinley National Park. Such history adds nothing to what has already been said on this subject, and that is that the appropriation mentioned was for the "general acquisition of privately owned lands within park and monument boundaries"; and as we have seen, there were many Acts of Congress granting specific authority to condemn lands as to certain specified national parks, but no such provision as to Mount McKinley National Park.

Plaintiff concedes that Sec. 257 of Title 40 alone is not sufficient authority for its complaint, but contends that the Court "appears to have overlooked the fact that 40 U.S.C.A. Sec. 257 contains a general grant of power to officers of the Federal Government to condemn property when such officers are authorized by Congress to procure real estate". This is an understatement, for this Court certainly did not overlook such fact. However, plaintiff also contends that the cited Appropriation Act "contains a specific grant of the power to acquire land for park purposes", which "the Court fails to recognize". No such specific grant of power with reference to Mount McKinley Park is found in any cited statute. In order to sustain such power there must be a clear intent of Congress, either by conferring "broad powers" such as held in the Polson and Threlkeld cases, or by specific action as in the Seneca and Crow cases. To sustain the contention of plaintiff would be to stretch the rule of "legislation by implication" beyond the powers of this Court.

In reference to that portion of my opinion relating to the preservation of the rights of homesteaders or entrymen to the full use and enjoyment of their land provided by the Act of Congress creating the Park (16 U.S.C.A. § 348, and 1932 amendment, § 355a), plaintiff cites the Yosemite Valley Case (In re Yosemite Valley), 1872, 15 Wall. 77, 82 U.S. 77, 21 L.Ed. 82, and Stockley v. United States, 260 U.S. 532, 43 S.Ct. 186, 67 L.Ed. 390, which deal with the question of whether a party, by mere settlement upon lands of the United States under pre-emption laws or as an entryman under homestead laws, acquires such a vested interest in the premises as to deprive Congress or the General Land Office of the power to divest it by a grant to another party. These decisions are not in point. Although such reservation may not be controlling, yet such specific Act of Congress seems important in determining the intent of the Congress with relation to condemnation of private land in Mount McKinley Park.

Plaintiff also contends that reference in the Court's opinion to legislation relating to other park areas should not serve as a "formula so as to decipher or evaluate such laws or legislation upon a comparison basis", and that the comparison made is not justified. Again, such Acts were cited to show the clear intent of Congress as to other national parks to condemn or acquire lands which, significantly, is not mentioned in the Act creating Mount McKinley Park. Incidentally, Congress has recently manifested the same intention in an Act to authorize the establishment of the Petrified Forest National Park in the State of Arizona (Public Law 85–358, 85th Congress, March 28, 1958, 72 Stat. 69), which specifically authorizes the Secretary of the Interior to acquire in the public interest any non-Federal land or interests in land within the area authorized to be established by such Park.

Finally, plaintiff contends that the Government cannot be held liable for costs in the absence of specific authorization by Congress, citing United States v. Patterson, 5 Cir., 206 F.2d 345; and that there is no statutory authority for taxing costs against the United States in this instance. This position appears to be correct.

Finding that Congress has not either expressly or by clear intendment au-

thorized the condemnation of land within the Park area here involved, I must adhere to my former opinion, except as to the matter of costs. Order dismissing plaintiff's complaint and this action as to Tract A may be presented accordingly. Findings of fact and conclusions of law will not be necessary.