**LaVonne V. GREWELL, Appellant,**

v.

**James G. WATT, Secretary of the Interior, Appellee.**

No. 78–2880.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 20, 1979.

Taken under Submission Sept. 8, 1981, after intermediate withdrawals from submission.

Decided Jan. 7, 1982.

Lee R. McNair, McNair & Henderson, Seattle, Wash., for appellant.

Maryann Walsh, Washington, D. C., argued, for appellee; Rene Gonzales, Anchorage, Alaska, Robert L. Klarquist and James W. Moorman, Gail Osherenko, Washington, D. C., on brief.

Before CHAMBERS and TANG, Circuit Judges, and THOMPSON,* District Judge.

CHAMBERS, Circuit Judge:

Mrs. Grewell took possession and occupied a five acre homesite near Nenana, Alaska, in July 1965 under the provisions of 43 U.S.C. § 687a. In July 1970, she applied to purchase the site, sending the $12.50 purchase price, and asserting that she had com-plied with statutory requirements for habitation and improvement. Her address during this period was in care of General Delivery, Nenana, Alaska—a town of some 362 inhabitants, according to the 1970 census. In April 1972, she sent the usual pink change-of-address card to the Nenana Post Office, instructing that her mail be forwarded to her at Box 23, Arlington, Washington. She received mail from Nenana, so forwarded, into 1974—although the precise dates of receipt are not clear. On August 9, 1974, more than four years after her application to purchase the site, the Fairbanks office of the Bureau of Land Management (BLM) sent her a notice addressed to General Delivery, Nenana, informing her that proceedings were being taken by the Secretary to contest her claim to the site and advising her that she had thirty days in which to respond to the complaint. The Nenana Post Office returned the letter to the BLM on September 12, 1974, indicating that her address was unknown.

Acting now with uncharacteristic speed, the BLM thirty-three days later obtained a default judgment against Mrs. Grewell. The notice of the default judgment was sent to her, again at General Delivery, Nenana. Eventually, this notice also was returned as undeliverable after someone in the Post Office had forwarded it to the address of an attorney in Washington who had once represented Mrs. Grewell in a completely unrelated matter. It is not totally clear just who did the forwarding but, as we have said, Nenana is a small town.

It was not until January 1975 that Mrs. Grewell first became aware of the government contest of her claim, of the default judgment, and of the expiration of the thirty-day appeal period. She promptly attempted an appeal, through the Fairbanks office of the BLM, but it was dismissed as untimely. An appeal to the Office of Hearings and Appeals of the Interior Board of Land Appeals was similarly dismissed, with the notation that the thirty-day period was

---

* The Honorable Bruce R. Thompson, United States District Judge from the District of Neva-  da, sitting by designation.

"jurisdictional." She then filed this action with the district court, contending that she had been denied due process of law and, moreover, that the Secretary's contest of her claim was barred by the terms of 43 U.S.C. § 1165.

Cross-motions for summary judgment were filed and the district judge, after taking evidence, granted summary judgment in favor of the Secretary. He held that there had been no denial of due process and that departmental regulations on service of legal documents were reasonably calculated to give notice to persons such as appellant. He also held that the Secretary's contest was not barred by the terms of Section 1165 of Title 43, also known as "the Confirmation Statute."

We conclude that the district court erred in concluding that the Secretary's action was not barred by the Confirmation Statute. Thus, we do not reach the potentially troublesome due process question and have no need to dwell on the conflicting evidence as to the forwarding of mail to Mrs. Grewell during the period in question, or the conflicting evidence as to the interest expressed by a Nenana postal employee in buying the Grewell site. And we are thus relieved from discussing the double standard presented by departmental regulations dealing with service of complaints and other legal documents—one standard for those who are "of record" and another standard for those who are not.

We have given thought to both the statute under which Mrs. Grewell claims her homesite (43 U.S.C. § 687a) and the statute which she argues barred the Secretary's contest after two years (43 U.S.C. § 1165). Both statutes had their genesis, either direct or indirect, in the Act of 1891 entitled "An Act to repeal timber-culture laws, and for other purposes" (26 Stat. 1095). Section 1 of the 1891 Act provided for claims of homesteads in any State or Territory, for claims of desert-lands, timber-lands, and claims under preemption laws. It also contained provisions dealing with Indian lands, Alaska townsites, and also with claims based on the occupation of Alaska lands "for the purpose of trade or manufactures."

Section 7 of the 1891 Act provided an affirmative restriction on the power of the Secretary. The language of the 1891 Act (with minor irrelevant changes) appears now as 43 U.S.C. § 1165:

"That after the lapse of two years from the date of the issuance of the receipt of such officer as the Secretary of the Interior may designate upon the final entry of any tract of land under the homestead, timber-culture, desertland, or preemption laws, or under the Act of March 3, 1891, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent-conveying the land by him entered, and the same shall be issued to him . . . ."

The district judge referred to this statute as a "statute of limitations," but we do not see it as such.[1] It is a statutory provision assuring the entryman of rights to a patent unless the Secretary contests the entry in timely fashion. Any contest coming after two years is "unauthorized and void." *Stockley v. United States*, 260 U.S. 532, 544, 43 S.Ct. 186, 189, 67 L.Ed. 390 (1923).

In 1898 another statute was enacted, entitled "An Act extending the homestead laws and providing for right of way of railroads in the District of Alaska, and for other purposes" (30 Stat. 409). The Act begins:

"That the homestead land laws of the United States and the rights incident thereto, including the right to enter surveyed or unsurveyed lands under provisions of law relating to the acquisition of title through soldiers' additional homestead rights, are hereby extended to the District of Alaska . . . ."

---

1. The district court and the parties have characterized the Confirmation Statute as a "statute of limitations." We decline to use such language as it is not a statute of repose, protecting against dilatory action. The Confirmation Statute, as we read it, permits an entryman to ground affirmative rights on its language.

Other provisions of the 1898 Act restricted the size of individual claims in Alaska to 80 (rather than 160) acres and placed certain other restrictions on them that distinguish them from homesteads under the 1891 Act. The 1898 Act also provided for eighty-acre claims "for the purpose of trade, manufacture, or other productive industry" in Alaska. The language is so similar to the language in the 1891 Act that we can only conclude that the genesis of the 1898 language was the 1891 Act itself. The 1898 Act contained no reference to any time limitation on the Secretary's contest. And, while it does specifically recognize the validity of claims theretofore made under the 1891 Act, it does not purport to repeal the 1891 Act.

In 1927, the 1898 Act was amended to provide for five-acre homesites by those "engaged in trade, manufacture, or other productive industry" in Alaska (44 Stat. 1364),[2] and the provision was codified as 43 U.S.C. § 687a. In 1934, the language of the 1898 Act (and Section 687a) was again amended to broaden the language to permit claims of five-acre homesites by any citizen "after occupying land of the character described as a homestead or headquarters...." (48 Stat. 809).[3] Mrs. Grewell's claim, as we have said, is a five-acre homesite claimed under the authority of 43 U.S.C. § 687a.

The Secretary's contest of her claim was not made for more than four years after she applied to purchase the site. It is her contention that the Secretary's contest was barred by the provisions of the Confirmation Statute (Section 1165). The Secretary says this is not so and that once the 1898 Act was adopted, new entrants on land to be used for trade and manufacturing purposes suddenly lost the protection that such entrants had previously enjoyed. The Secretary admits that prior to 1898 such entrants had the protection of the Confirmation Statute. He argues that once the 1898 Act was adopted such entrants could not qualify under the wording of § 1165, as they were not proceeding "under the homestead laws" and they could no longer qualify as proceeding "under the Act of March 3, 1891." He also seems to be arguing that once the 1898 Act was adopted, citizens entering for manufacturing and trade purposes were subject to contests by the Secretary at any time whatsoever; the four-year delay in this case might be a ten-year or even a twenty-year delay in another case.

We do not accept the Secretary's rationale. Had Congress wished to withdraw the protection of Section 1165 from this class of entrants, it could have done so directly. Instead, it chose to adopt the 1898 Act without any reference to any time limitation on the Secretary's contests. From this we infer that the language, already in effect, was deemed sufficient to meet 1898 needs. From this we also infer an intent to provide continuity of protection. Had the

2. "*Provided*, That any citizen of the United States twenty-one years of age employed by citizens of the United States, associations of such citizens, or by corporations organized under the laws of the United States, or of any State or Territory, whose employer is engaged in trade, manufacture, or other productive industry, and any citizen of the United States twenty-one years of age who is himself engaged in trade, manufacture, or other productive industry may purchase one claim, not exceeding five acres, of unreserved public lands, such tract of land not to include mineral, coal, oil or gas lands, in Alaska as a homestead or headquarters, under rules and regulations to be prescribed by the Secretary of the Interior, upon payment of $2.50 per acre."

3. "*Provided further*, That any citizen of the United States, after occupying land of the character described as a homestead or headquarters, in a habitable house, not less than five months each year for three years, may purchase such tract, not exceeding five acres, in a reasonable compact form, without any showing as to his employment or business, upon payment of $2.50 per acre, under rules and regulations to be prescribed by the Secretary of the Interior, and in such cases surveys may be made without expense to the applicants in like manner as the survey of settlement claims under the Act of June 28, 1918 (40 Stat. 632), as amended by section 1 of the Act of April 13, 1926 (44 Stat. 243): *And provided further*, That the minimum payment for any such tract shall be $10, and no person shall be permitted to purchase more than one tract except upon a showing of good faith and necessity satisfactory to the Secretary of the Interior."

intent been to discontinue the protection of the Confirmation Statute as to this very selective class of entrants, surely the Congress would have manifested that intent more clearly.

The language of Section 1165 refers to entries under "the homestead laws," as well as three other enumerated categories of "laws." Mrs. Grewell contends that this is a reference to "homestead" type legislation, and not to precise statutes, or portions of statutes, defining homestead rights narrowly as entries for purely residential purposes. We agree. Had the Congress been thinking of the latter, it could very easily have made reference to the precise statutes or portions of statutes that it had in mind. The term "homestead" is a term that is capable of shades of meanings. We have no qualms about describing the Act of 1898 as a "homestead law." Its primary purpose, although perhaps not its exclusive purpose, was to extend the homestead laws to Alaska. As it was a "homestead law," then someone entering on Alaska public lands under its provisions was entitled to the protection of the two-year statute, just as such entrants were protected prior to 1898.

As we noted earlier, the homesite provisions were added to the 1898 Act in 1927 and again in 1934. While the 1927 amendment limited entries for five-acre homesites to those who were engaged in trade or manufacturing, the 1934 amendment eliminated the references to trade and manufacturing and permitted any citizen to claim a homesite "after occupying land of the character described as a homestead or headquarters." In our view this is additional evidence to support the "homestead" character of the entries made under the 1898 Act. The Secretary urges us to believe that the Congress did not really mean to say "homestead" in 1934; we believe the choice of language was not unintentional.

The Secretary also argues that his own interpretation of this statutory language, over the years, has been a narrow one and that we are obliged to defer to his interpretation (i.e., that he is not subject to any time limitation with respect to entries such as that made by Mrs. Grewell). We do not feel obliged to defer to so self-serving an interpretation of the Secretary against the citizen. Section 1165 barred the Secretary's long delayed contest of Mrs. Grewell's claim under 43 U.S.C. § 687a. Title to the homesite should therefore be transferred to her. See *Lane v. Hoglund*, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066 (1917).

Reversed and remanded for proceedings consistent herewith.