999 F.2d 1376
 Viggo Thor BRANDT-ERICHSEN, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND
MANAGEMENT; United States Department of Interior, National
Parks Service; Manuel Lujan, in his official capacity as
Secretary of Interior; Charles Budge, in his official
capacity as Superintendent of the Wrangell-St. Elias
National Park; Richard H. Martin, in his official capacity
as Superintendent of the Wrangell-St. Elias National Park;
William P. Horn, Deputy Secretary of the Department of
Interior in his official capacity; John Tiffany, Inspector
for the Bureau of Land Management, Glenallen Detachment in
his official capacity; Stuart Hirsch, Inspector for the
Bureau of Land Management in his official capacity,
Defendants-Appellees.
 No. 91-35835.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided July 15, 1993.
 
 Scott A. Brandt-Erichsen, Anchorage, AK, for plaintiff-appellant.
 Apphia T. Schley and Andrea N. Ward, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before: HUG, POOLE and FERGUSON, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Appellant Viggo Thor Brandt-Erichsen appeals the district court's summary judgment in favor of the appellees, the United States Department of the Interior's Bureau of Land Management and its employees, on the ground that Brandt-Erichsen failed to obtain a "receipt upon final entry" triggering 43 U.S.C. § 1165 and therefore, did not obtain title to an 80-acre tract of land in Alaska. We affirm the district court's summary judgment.
 
 I. BACKGROUND
 
 2
 Sometime in 1968, Brandt-Erichsen entered an 80-acre tract of land in the Wrangell-St. Elias National Park and Preserve in Alaska. In August of that same year, Brandt-Erichsen filed a Notice of Location of Settlement or Occupancy Claim with the Bureau of Land Management. With the notice, Brandt-Erichsen paid the required recording fees and obtained a receipt.
 
 
 3
 In August 1973, Brandt-Erichsen filed an application to purchase the 80 acres as a trade and manufacturing site and petitioned for a survey of the land with the Bureau of Land Management. He paid the required application fee for the patent and survey and obtained a receipt.
 
 
 4
 In January 1979, the Bureau of Land Management filed an administrative complaint contesting Brandt-Erichsen's request for a patent on the property. On December 12, 1979, an administrative law judge cancelled Brandt-Erichsen's entry on the ground that at the time he applied to purchase the tract, Brandt-Erichsen was not engaged in business operations from which he would derive a profit. The administrative law judge's determination was affirmed by the Interior Board of Land Appeals.
 
 
 5
 In May 1989, Brandt-Erichsen filed a complaint in district court. In his second cause of action, Brandt-Erichsen claimed equitable title to the 80 acres under 43 U.S.C. §§ 1165 and 687a.
 
 
 6
 In November 1990, both Brandt-Erichsen and the appellees filed summary judgment motions. On May 8, 1991, the district court granted summary judgment in favor of the appellees on Brandt-Erichsen's second cause of action. The court decided that: (1) 43 U.S.C. § 1165 entitled a person who satisfied its criteria to equitable title, and (2) Brandt-Erichsen failed to satisfy its criteria as he did not pay the entire purchase price and obtain the receiver or manager's receipt. The court entered final judgment as to the section 1165 issue under Fed.R.Civ.P. 54(b).
 
 
 7
 Brandt-Erichsen filed a timely notice of appeal with this court. We have jurisdiction over the appeal under 28 U.S.C. §§ 1291, 1294.
 
 II. DISCUSSION
 
 8
 A. Summary Judgment.
 
 
 9
 A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. FDIC v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 10
 Brandt-Erichsen contends that the district court erred by granting summary judgment in favor of the appellees on the ground that he failed to obtain a "receipt upon final entry" for purposes of 43 U.S.C. § 1165. He argues that the receipts he obtained for payment of fees in connection with his application to purchase land under 43 U.S.C. § 687a constituted a "receipt upon final entry" triggering the two-year statutory period. Because the Bureau of Land Management failed to object within the two-year period, Brandt-Erichsen asserts that he has equitable title to the land. The appellees disagree and argue that Brandt-Erichsen was required to pay the purchase price for the land before obtaining a "receipt upon final entry" and triggering the statute. The problem before us is to determine what constitutes "final entry" within the meaning of the statute.
 
 
 11
 1. The Statutes.
 
 
 12
 Congress passed what is now known as the Confirmation Statute, 43 U.S.C. § 1165, as part of a 1891 "Act to repeal timber-culture laws, and for other purposes." 26 Stat. 1095. Section 7 of the 1891 Act read:
 
 
 13
 [A]fter the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him....
 
 
 14
 26 Stat. 1099 (Emphasis Added). This section, now 43 U.S.C. § 1165, placed an affirmative restriction on the Commissioner of the General Land Office, now the Secretary of the Interior, to contest the rights of an entryman to a patent in a timely fashion. See Grewell v. Watt, 664 F.2d 1380, 1382 (9th Cir.1982).
 
 
 15
 Congress enacted what today is section 687a as part of a 1898 "Act extending homestead laws ... in the District of Alaska." 30 Stat. 409. As enacted, this section stated:
 
 
 16
 [A]ny citizen of the United States ... in the possession of and occupying public lands in the District of Alaska in good faith for the purposes of trade, manufacture, or other productive industry, may ... purchase one claim ... not exceeding eighty acres of such land ..., at two dollars and fifty cents per acre, upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry....
 
 
 17
 Id. With the exception of the deletion of the words "District of," this section has remained unchanged since the time of its enactment. See 43 U.S.C. § 687a.
 
 
 18
 Although section 1165 was enacted as part of the 1891 Act and section 687a as part of the 1898 Act, we have held that Congress intended section 1165 to apply to claims under section 687a. Grewell, 664 F.2d at 1384.
 
 
 19
 2. Statutory Construction.
 
 
 20
 Judicial review of an agency's construction of a statute that it administers is a two-part process. Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). First, we examine "whether Congress has directly spoken to the precise question at issue." Id. If the intent of Congress is clear, then we must give effect to that intent. Id. at 842-43, 104 S.Ct. at 2781-82. Second, if we determine that Congress has not directly addressed the precise question at issue, then we must decide whether the agency's interpretation is a permissible construction of the statute. Id. at 843, 104 S.Ct. at 2782.
 
 
 21
 a. Congress' Intent.
 
 
 22
 Congress did not expressly define the phrase "receipt upon final entry" as found in 43 U.S.C. § 1165. In a series of decisions, the Interior Board of Land Appeals ("IBLA")[1] has interpreted the phrase to require an entryman to comply with the requirements for a patent application and to pay the entire purchase price of the land. For the reasons that follow, I do not believe that Congress' intent in using this phrase is clear.
 
 
 23
 At the time Congress passed the Confirmation Statute, an entryman simultaneously received a receiver's receipt, indicating submission of final proof and payment of required monies, and a register's certificate, indicating approval of the proof and declaring the entryman entitled to a patent. 30 Stat. 414 (1898); see also Stockley v. United States, 260 U.S. 532, 538-39, 43 S.Ct. 186, 187-88, 67 L.Ed. 390 (1923). By 1908, the procedures of the Land Department changed, and the Department no longer issued receiver's receipts and register's certificates simultaneously. Stockley, 260 U.S. at 538, 43 S.Ct. at 187.
 
 
 24
 In reviewing the effects of this change on the meaning of "receipt on final entry," the Supreme Court, in Stockley, 260 U.S. at 543, 43 S.Ct. at 189, held that the receiver's receipt alone constituted a "receipt upon final entry." The Court explained that Congress created section 1165 to avoid delays of unreasonable lengths of time between the time an entryman completed all the requirements of law and the time the agency adjudicated on the final proof. Id. at 540, 43 S.Ct. at 188. The Court noted that "[h]aving submitted to the proper officials proof showing full compliance with the law, and having paid all the fees and commissions lawfully due, [the entryman] had done everything which the law required on his part and became entitled to immediate issuance of the receiver's receipt, and this receipt was issued and delivered to him. No subsequent receipt was contemplated or required." Id.
 
 
 25
 In 1946, however, 43 U.S.C. § 1165 was amended as a result of the creation of the Department of the Interior's Bureau of Land Management. 1946 Reorganization Plan No. 3, § 403, 60 Stat. 1100. The term "receiver's receipt upon final entry" was replaced by "receipt of such officer as the Secretary of the Interior may designate upon final entry." 43 U.S.C. § 1165 (historical note).
 
 
 26
 As this change centered on the language relied upon by the Court in Stockley, I cannot conclude that Congress intended to continue construing "receipt upon final entry" in the manner suggested by the dissent. The legislative grant of discretion to the Secretary of the Interior regarding the procedures for issuing the receipt has, at the least, made unclear the Congressional intent regarding what constitutes such receipt. I thus turn to the agency's interpretation of the statute.
 
 
 27
 b. Agency's Interpretation.
 
 
 28
 By the 1970's, when Brandt-Erichsen entered the 80-acre tract of land and filed his application to obtain a patent, the Bureau of Land Management had issued a number of regulations dealing with land patent applications. Under these regulations, the receiver and register had been replaced by a Bureau of Land Management manager. 43 C.F.R. § 1862.6. The manager issued three different "receipts" to an entryman as part of the process to obtain land under 43 U.S.C. § 687a before issuing a final certificate. Id. The first receipt was issued after the entryman paid a $10 recording fee and filed a notice of location of claim. 43 C.F.R. § 2562.1(d); see also United States v. Bunch, 64 I.B.L.A. 318, 324 (1982), aff'd sub nom, Bunch v. Kleppe, Civ. No. A76-115 (D.Alaska Jan. 14, 1983). The second receipt was issued when the entryman paid a $10 service fee and submitted the proofs for application of a patent. 43 C.F.R. § 2562.3(b). A final receipt was issued when the entryman paid the purchase price. 43 C.F.R. § 2562.7. Normally, this final receipt was issued after the surveys of the land were completed and the patent had been approved. Id.
 
 
 29
 In a series of decisions, the IBLA has held that 43 U.S.C. § 1165 is not triggered unless the entryman, in addition to fulfilling the other requirements for a patent application, has paid the entire purchase price for the land and received the final receipt. See United States v. Jones, 106 I.B.L.A. 230, 264 (1988) (holding that the requirement the entryman pay the purchase price was a congressionally imposed condition for acquiring the right); Bunch, 64 I.B.L.A. at 330 (holding that the entrywoman was not entitled to a patent under 43 U.S.C. § 1165 because she had not received a final receiver's receipt after payment of the purchase price); United States v. Braniff, 65 I.B.L.A. 94 (1982) (holding that although the entryman paid his application fees and obtained receipts, he failed to obtain the final receipt for payment of the statutory purchase price); United States v. Boyd, 39 I.B.L.A. 321, 328-29 (1979) (holding that appellant failed to show any evidence that final payments had been made). In Bunch, 64 I.B.L.A. at 325, the Board explained that the first two receipts that the entrywoman received did not "fall[ ] within the words of the statute" and absent payment of the purchase price and issuance of the final receipt, the two-year period of 43 U.S.C. § 1165 had not begun.
 
 
 30
 Although the judiciary is the final arbiter of the issue of statutory construction, an administrative agency's interpretation of a statute it is charged with administering is accorded substantial deference. Haynes v. United States, 891 F.2d 235, 238-39 (9th Cir.1989). The statute at issue, 43 U.S.C. § 1165, is part of the acts that the Department of the Interior is charged with administering. See 43 U.S.C. §§ 1 and 1165 (historical notes). As a result, the decisions of the Interior Board of Land Appeals, a part of the Department of the Interior, on the meaning of a "receipt upon final entry" for purposes of 43 U.S.C. § 1165 should be given substantial deference. Furthermore, to affirm we need not conclude that the agency's construction was the only one it permissibly could have adopted or even the reading we would have reached if the question initially had arisen in a judicial proceeding, but only that the agency's interpretation is reasonable and not contrary to congressional intent. Chevron U.S.A., 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11.
 
 
 31
 Requiring payment of the purchase price before section 1165 is triggered is in keeping with the congressional purpose of avoiding delays between the time the entryman completes the patent requirements and the agency adjudicates the final proof. In fact, it furthers this purpose by making sure all requirements are completed. Because the agency's interpretation of this term is reasonable and in keeping with the purpose of the statute as a whole, I conclude that a "receipt upon final entry" requires the entryman to pay the purchase price to trigger the two-year period under 43 U.S.C. § 1165. Thus, Brandt-Erichsen was required to pay the $2.50 per acre for the approximately 80 acres to obtain a final manager receipt. As the statute was not triggered, Brandt-Erichsen did not obtain equitable title to the land in question.
 
 
 32
 Because there are no genuine issues of material fact and the district court correctly applied 43 U.S.C. § 1165, the grant of summary judgment should be affirmed.
 
 
 33
 B. Waiver.
 
 
 34
 The appellees also argue that Brandt-Erichsen waived the issue of whether the Confirmation Statute was triggered by failing to raise this issue in the earlier administrative proceedings. While the appellees raised the waiver issue in their motion to dismiss and their reply brief in support of the motion to dismiss, the district court did not rely on waiver as a ground for granting the appellees' summary judgment motion. As the district court never reached the issue and the Confirmation Statute is dispositive in this case, I find it unnecessary to reach the waiver issue.
 
 
 35
 C. Attorney Fees.
 
 
 36
 Brandt-Erichsen claims that he is entitled to attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. A plaintiff may be awarded attorney fees pursuant to the Equal Access to Justice Act, if he is a prevailing party and the position of the United States was not substantially justified. Petrone v. Secretary of Health & Human Serv., 936 F.2d 428, 429 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1161, 117 L.Ed.2d 409 (1992). As Brandt-Erichsen was not the prevailing party, he is not entitled to attorney fees under this statute.
 
 
 37
 AFFIRMED.
 
 FERGUSON, Circuit Judge, specially concurring:
 
 38
 I concur in the conclusion reached by Judge Poole, but for a different reason. Viggo Thor Brandt-Erichsen has lost his right to assert that 43 U.S.C. § 1165 grants him equitable title because he failed to do so when he should have--a decade ago in an administrative proceeding before the Department of the Interior (DOI) acting in a judicial capacity. In that proceeding, DOI successfully contested Brandt-Erichsen's application to purchase an 80-acre tract of land as a trade and manufacturing site. Today, Brandt-Erichsen brings a quiet title action concerning that same tract, arguing that section 1165 should have barred DOI from contesting his claim. Because Brandt-Erichsen has waived his opportunity to rely on that statute, and also because he has failed to show that he satisfies the requirements of that statute, the judgment of the district court should be affirmed.
 
 
 39
 In early 1979, DOI filed an administrative complaint contesting Brandt-Erichsen's 1973 application to purchase the parcel of land, which is situated within what is now Wrangell-St. Elias National Park and Preserve. Later that year, an administrative law judge found for DOI and cancelled Brandt-Erichsen's entry because, at the time of his application, Brandt-Erichsen was not engaged in a business operation from which he could reasonably expect to derive a profit. DOI's Interior Board of Land Appeals affirmed. 46 I.B.L.A. 239 (March 27, 1980). Brandt-Erichsen did not seek judicial review of that final agency action.
 
 
 40
 As a preliminary matter, Brandt-Erichsen can not rely on section 1165 because he has not shown he is in "full compliance with the [Homestead] law," which is required to trigger the running of section 1165's two-year statutory period. Stockley v. United States, 260 U.S. 532, 540, 43 S.Ct. 186, 188, 67 L.Ed. 390 (1923). In final agency action, DOI canceled Brandt-Erichsen's entry, finding that the extremely limited revenue Brandt-Erichsen generated on the land during his prove-up period did not indicate that at the time of his application to purchase the land he was engaged in actual businesses from which he could expect to derive a profit. Brandt-Erichsen therefore failed to show that he was "in possession of and occupying public lands ... for the purposes of trade, manufacture, or other productive industry," 43 U.S.C. § 687a. He has still made no such showing, notwithstanding the Notice and the Application he filed with DOI. Because he has not shown that he ever made a valid entry for the purpose of productive industry onto the land he now claims, he certainly has not shown that two years have passed since he was issued a receiver's receipt upon a final entry for such purposes.
 
 
 41
 Second, Brandt-Erichsen has waived any opportunity to take advantage of section 1165, even if it might otherwise apply. At no time in the agency proceedings ten years ago did Brandt-Erichsen claim that section 1165 barred DOI from contesting his application based upon its failure to do so within two years of his procuring a receipt upon final entry.
 
 
 42
 Now, a decade later, Brandt-Erichsen brings this quiet title action, arguing that DOI should have been so barred. He offers no explanation of why he failed to raise the statute in the administrative proceedings, why he failed to seek judicial review, or why he failed to seek reconsideration. I can see no "exceptional circumstances" warranting our review at this stage. See Marathon Oil Co. v. United States, 807 F.2d 759, 757 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Although we should proceed with flexibility and caution when according preclusive effect to a failure to raise a claim before an administrative agency acting in a judicial capacity, see United States v. Lasky, 600 F.2d 765, 768 (9th Cir.), cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), I see no reason on the facts of this case for us to set aside the normal operation of claim preclusion.
 
 
 43
 An exceptional circumstance is asserted to exist because it would have been futile for Brandt-Erichsen to raise section 1165 before DOI ten years ago because its mind was set. First, what may retrospectively appear futile may not have appeared so--or been so--at the time. Of the four Interior Board of Land Appeals cases cited in support of this proposition, three, including the one with the most exhaustive discussion, were decided after the administrative proceedings in this case. "The agency's interest[ ] in ... correcting its own errors" is an important element in deciding whether exceptional circumstances exist warranting our review. Marathon Oil, 807 F.2d at 768. The futility argument may have had some validity if Brandt-Erichsen had sought judicial review of the final agency action ten years ago without having raised the claim in the agency proceedings. However, to raise it now, in a collateral proceedings ten years later, involves too much speculation with insufficient foundation.
 
 
 44
 Moreover, Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496 (9th Cir.1980) cannot justify futility as an exceptional circumstance in this case. Andrus involved the failure to exhaust administrative remedies, rather than the failure to assert a claim in an administrative proceeding that actually occurred and was not appealed. Furthermore, in Andrus we excused failure to exhaust administrative remedies not only because it would have been futile, but also because 1) the administrative remedies available were inadequate, and 2) the administrative forums available to the claimant were "legally foreclosed from overruling the Secretary's position." Andrus, 648 F.2d at 500-501. Those conditions do not exist in this case.
 
 
 45
 In sum, I concur because I fail to see why we should reach out to allow a party to establish a lumbering business and hunting lodge on National Park and Preserve Land on the basis of a statute for which he has failed to prove he qualifies, and which he could and should have attempted to rely upon ten years ago.
 
 HUG, Circuit Judge, dissenting:
 
 46
 I respectfully dissent. I would reverse the district court's decision to grant summary judgment in favor of appellees because the district court erred in determining that Brandt-Erichsen failed to obtain a "receipt upon final entry" for purposes of 43 U.S.C. § 1165 (1988).
 
 I. The Statutes
 
 47
 As we observed in Grewell v. Watt, 664 F.2d 1380 (9th Cir.1982), both the statute under which Brandt-Erichsen claims his site, 43 U.S.C. § 687a (1982) (repealed effective 1986),[1] and the statute which he argues barred the BLM's contest after two years, 43 U.S.C. § 1165, had their genesis in an 1891 congressional act entitled "An Act to repeal timber-culture laws, and for other purposes," Ch. 561, 26 Stat. 1095 (1891) ("the 1891 Act"). See id. at 1382. Section 1 of the 1891 Act contained provisions dealing with claims based on the occupation of Alaska lands "for the purpose of trade or manufactures." Id.
 
 A. 43 U.S.C. § 687a
 
 48
 Section 12 of the 1891 Act contained the original version of what became 43 U.S.C. § 687a. This section described who was entitled to claim land under the Act:
 
 
 49
 [A]ny citizen of the United States ... in possession of and occupying public lands in Alaska for the purpose of trade or manufactures, may purchase not exceeding one hundred and sixty acres to be taken as near as practicable in a square form, of such land at two dollars and fifty cents per acre....
 
 
 50
 Ch. 561, 26 Stat. 1100 (1891). Section 13 set out the process by which persons entitled to claim such land could do so:
 
 
 51
 [I]t shall be the duty of any person ... entitled to purchase land under this act to make an application to the United States marshal, ex officio surveyor-general of Alaska, for an estimate of the cost of making a survey of the lands occupied by such person ... and the cost of the clerical work necessary to be done in the office of the said United States marshal, ex officio surveyor-general; and on the receipt of such estimate from the United States marshal, ex officio surveyor-general, the said person ... shall deposit the amount in a United States depository, as is required by section numbered twenty-four hundred and one, Revised Statutes, relating to deposits for surveys.
 
 
 52
 That on the receipt by the United States marshal, ex officio surveyor-general, of the said certificates of deposit, he shall employ a competent person to make such survey, under such rules and regulations as may be adopted by the Secretary of the Interior, who shall make his return of his field notes and maps to the office of the said United States marshal, ex-officio surveyor-general; and the said United States marshal, ex officio surveyor-general, shall cause the said field notes and plats of such survey to be examined, and, if correct, approve the same, and shall transmit certified copies of such maps and plats to the office of the Commissioner of the General Land Office.
 
 
 53
 That when the said field notes and plats of said survey shall have been approved by the said Commissioner of the General Land Office, he shall notify such person ... who shall then, within six months after such notice, pay to the said United States marshal, ex officio surveyor-general, for such land, and patent shall issue for the same.
 
 
 54
 Ch. 561, 26 Stat. 1100 (1891) (emphasis added).
 
 
 55
 Contrary to Judge Poole's determination, I conclude that the statutory language makes Congress' intent clear. When it enacted the 1891 Act, Congress intended that an eligible claimant would pay the purchase price of such land only after a survey had been conducted and approved by the Commissioner of the General Land Office.[2] Furthermore, Congress granted such a claimant an additional six months after notification of the Commissioner's approval of a survey in which to tender the purchase price of the land.
 
 
 56
 In 1898, Congress enacted another statute entitled "An Act Extending the homestead laws and providing for right of way of railroads in the District of Alaska, and for other purposes," Ch. 299, 30 Stat. 409 (1898) ("the 1898 Act"). Section 10 provides, in pertinent part:
 
 
 57
 [A]ny citizen of the United States ... in the possession of and occupying public lands in the District of Alaska in good faith for the purposes of trade, manufacture, or other productive industry, may each purchase one claim only not exceeding eighty acres of such land for any one person ... at two dollars and fifty cents per acre, upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry....
 
 
 58
 Ch. 299, 30 Stat. 413 (1898). "Th[is] language is so similar to the language of the 1891 Act that we can only conclude that the genesis of the 1898 language was the 1891 Act itself." Grewell, 664 F.2d at 1383. Moreover, the 1898 Act "specifically recognize[s] the validity of claims theretofore made under the 1891 Act, it does not purport to repeal the 1891 Act." Id.[3]
 
 
 59
 The 1898 Act contained no reference to payment of the purchase price as a step in the process through which persons entitled to claim such land could acquire it. "From this we infer that the language, already in effect, was deemed sufficient to meet 1898 needs." Id. We also infer that Congress intended to retain the land claims process articulated in section 13 of the 1891 Act. Had Congress intended to modify this process to require eligible claimants to tender the purchase price prior to completion and approval of a survey, "surely Congress would have manifested that intent more clearly." Id. at 1383-84.
 
 
 60
 The language of the 1898 Act, with minor irrelevant changes, appears now as 43 U.S.C. § 687a. Moreover, the process by which persons entitled to claim such land may acquire it remains basically unchanged. See 43 C.F.R. §§ 2562.1-2562.7 (1992). Most notably, current BLM regulations require an eligible claimant to pay the purchase price of the land only after a survey has been conducted and proofs approved. 43 C.F.R. § 2562.7.
 
 
 61
 In this case, Brandt-Erichsen filed a Notice of Location of Settlement or Occupancy Claim and submitted the required fee in accordance with 43 C.F.R. § 2562.1. He also filed an Application to Purchase Trade and Manufacturing Site and Petition for Survey along with the required fee in accordance with 43 C.F.R. §§ 2562.3, 2562.4. Brandt-Erichsen received receipts for the payments. The next step in the process was the completion of a survey by the Government. See 43 C.F.R. § 2563.4. Brandt-Erichsen was not required to tender the purchase price of the land until after the survey had been conducted and approved. See 43 C.F.R. § 2562.7.
 
 B. 43 U.S.C. § 1165
 
 62
 The Supreme Court's decision in Stockley v. United States, 260 U.S. 532, 43 S.Ct. 186, 67 L.Ed. 390 (1923), confirms my interpretation of this land claims process. In Stockley, the Supreme Court focused its attention on section 7 of the 1891 Act, which is codified at 43 U.S.C. § 1165. Section 7 is now known as the "Confirmation Statute," and it is the statute upon which Brandt-Erichsen relies to argue that the BLM's contest was barred.
 
 Section 7 of the 1891 Act provided:
 
 63
 That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him....
 
 
 64
 Ch. 561, 26 Stat. 1099 (1891) (emphasis added).
 
 
 65
 In Stockley, the Supreme Court concluded that the entryman was entitled to a receiver's receipt once he had complied with the provisions of the homestead laws, submitted final proof, and paid the commissions and fees then due. 260 U.S. at 540, 43 S.Ct. at 188. The receiver's receipt that the entryman had been issued showed that he had paid $3.01 for 71.25 acres of land, and not the purchase price of $89.06.[4] See id. at 536-37, 43 S.Ct. at 186-87. The entryman in Stockley did not pay the purchase price.
 
 
 66
 The Supreme Court proceeded to conclude that once the receiver's receipt issued, section 7 of the 1891 Act was implicated, and the two-year time period within which the Government could contest the claim began to run. Id. at 539-40, 43 S.Ct. at 187-88. The Court expressly rejected the Government's contention that Stockley's receipt "obtain[ed] no validity as a 'receiver's receipt upon the final entry' until after the proof ha[d] in fact been examined and approved." Id. at 539, 43 S.Ct. at 188. Because the Commissioner of the General Land Office waited more than three years after the issuance of the receiver's receipt to contest the entryman's claim, the Supreme Court held that full equitable title had vested in the entryman, and he had become entitled to a patent by virtue of section 7 of the 1891 Act. Id. at 544, 43 S.Ct. at 189.
 
 
 67
 Like the entryman in Stockley, Brandt-Erichsen filed the appropriate documents and paid the fees lawfully due, but he did not tender the purchase price. Moreover, Brandt-Erichsen received receipts for the fees submitted. The only steps left in the process were the Government's completion and approval of a survey of the land and, thereafter, Brandt-Erichsen's payment of the purchase price. See 43 C.F.R. §§ 2562.4, 2562.7 (1992). The Government waited more than five years after Brandt-Erichsen received a receipt for payment of the fee accompanying his Application to Purchase Trade and Manufacturing Site to contest his claim. Thus, Brandt-Erichsen is entitled to a patent conveying the land by virtue of 43 U.S.C. § 1165. See Stockley, 260 U.S. at 544, 43 S.Ct. at 189; Grewell, 664 F.2d at 1382.
 
 
 68
 Appellees argue that we should defer to the agency's interpretation of the Confirmation Statute. Appellees look to United States v. Jones, 106 I.B.L.A. 230 (1988); United States v. Braniff, 65 I.B.L.A. 94 (1982); United States v. Bunch, 64 I.B.L.A. 318 (1982); United States v. Boyd, 39 I.B.L.A. 321 (1979), for the proposition that the two-year period referred to in 43 U.S.C. § 1165 does not begin to run until a claimant has tendered or paid the purchase price.
 
 
 69
 Although these decisions embrace appellees' interpretation of 43 U.S.C. § 1165, the Interior Board of Land Appeals misconstrued the plain language of the statute to reach them. In Bunch, which contains the Board's most exhaustive discussion of this issue, the Board incorrectly emphasized the finality of payment rather than the finality of entry. See 64 I.B.L.A. at 324. In fact, the Board repeatedly referred to the "final receipt of the receiver" rather than the "receiver's receipt upon the final entry" (26 Stat.1099) or "the receipt of such officer as the Secretary of the Interior may designate upon the final entry" (43 U.S.C. § 1165). See id. The Board concluded that because Bunch had not paid or tendered the purchase price, "nothing which could be considered a 'final receipt' ha[d] issued to her or [was] due her." Id.
 
 
 70
 In contrast, the Stockley Court carefully analyzed the term "final entry" in an effort to determine whether the receipt issued to the entryman fell within the meaning of the statute. See 260 U.S. at 539-40, 43 S.Ct. at 187-88. Despite the fact that the entryman had not tendered the purchase price, the Supreme Court concluded that he "did, in fact, make final entry and the receiver did, in fact, issue and deliver his receipt thereon." Id. at 542, 43 S.Ct. at 189. Thus, the Board's decisions are in direct conflict with the Supreme Court's decision in Stockley.
 
 
 71
 In Bunch, the Board noted that "because the amount of land in the claim cannot be ascertained without a survey, it would not have been possible for [Bunch] to pay the correct amount, or for the officer designated to issue a receipt evincing final payment, until the number of acres in the claim was known." 641 I.B.L.A. at 325. Contrary to the Board's contention, this observation lends support to my interpretation of 43 U.S.C. § 1165. Once a claimant has filed the appropriate documents and submitted the fees then due in an effort to acquire unsurveyed land, he must wait for the Government to conduct and approve a survey before he may tender the purchase price, and he must tender the purchase price before he can get what the Board characterizes as the "final receipt." To require the claimant to obtain such a "final receipt" before the two-year period described in 43 U.S.C. § 1165 begins to run would frustrate the purpose of the statute--to avoid delays for an unreasonable length of time, that is, more than two years. See Stockley, 260 U.S. at 540-41, 43 S.Ct. at 188.
 
 
 72
 That is precisely the situation with which we are presently faced. Brandt-Erichsen filed an Application to Purchase Trade and Manufacturing Site and paid the required application fee on August 6, 1973. The BLM waited until January 18, 1979, more than five years later, to file an administrative complaint contesting Brandt-Erichsen's request for a patent on the property. Under appellees' interpretation of 43 U.S.C. § 1165, the BLM's conduct in this case must be approved. Such an outcome is contrary to the expressed intent of Congress.
 
 
 73
 Although the agency's interpretation of the statute is entitled to deference, see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984), it need not be followed if it appears from the statute or its legislative history that the interpretation is not one that Congress would have sanctioned. "When Congress has plainly described the instrument from whose date the statute begins to run as the 'receipt upon the final entry,' there is no warrant for construing it to mean only a receipt issued simultaneously with the certificate or one issued after the adjudication on the final proof, which might be--and in this instance was--postponed indefinitely." Stockley, 260 U.S. at 540, 43 S.Ct. at 188. Thus, appellees' reading of the statute is not one that Congress would have sanctioned.
 
 
 74
 I conclude that the district court incorrectly applied the relevant substantive law. Thus, I would reverse the district court's decision to grant summary judgment in favor of appellees. See FDIC v. O'Melveny & Myers, 969 F.2d 744, 747 (9th Cir.1992); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 II. Waiver
 
 75
 Appellees also argue that Brandt-Erichsen waived his argument based upon the Confirmation Statute by failing to raise it during the administrative proceedings before the agency. Generally, we will not consider issues not presented before an administrative proceeding at the appropriate time. Marathon Oil Co. v. United States, 807 F.2d 759, 767 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). However, we may "decide issues over which an agency has power and jurisdiction when 'exceptional circumstances' warrant such review, notwithstanding the petitioner's failure to present them to the agency." Id. at 768 (quoting Reid v. Engen, 765 F.2d 1457, 1461 (9th Cir.1985)).
 
 
 76
 In the absence of a statute expressly requiring that the Confirmation Statute argument must be raised before the agency, we must balance "the agency's interests 'in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances.' " Id. (quoting Litton Indus., Inc. v. FTC, 676 F.2d 364, 369-70 (9th Cir.1982)). I conclude that Brandt-Erichsen was not required to raise this argument before the agency as it would have been futile for him to do so.
 
 
 77
 Contrary to appellees' contention, Brandt-Erichsen's failure to raise this argument during the administrative proceedings did not preclude the agency from interpreting 43 U.S.C. § 1165 and related regulations. In the words of appellees, "the Department of Interior (DOI) has consistently held that, with respect to the purchase of public lands in Alaska, the two-year limitation does not begin to run until the claimant has tendered the purchase price in accordance with the Alaska Act, 43 U.S.C. § 687a." Appellee's Brief at 9. The decisions of the Interior Board of Land Appeals are consistent with DOI's interpretation. See Jones, 106 I.B.L.A. at 264-66; Braniff, 65 I.B.L.A. at 97-98; Bunch, 64 I.B.L.A. at 324-25; Boyd, 39 I.B.L.A. at 328-29. As a practical matter, the agency's established position renders administrative review of this issue meaningless. See Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496, 500-01 (9th Cir.1980).
 
 
 78
 Because it would have been futile for Brandt-Erichsen to raise the Confirmation Statute argument before the agency, I conclude that exceptional circumstances justify our consideration of this issue.
 
 
 
 [1]
 The Interior Board of Land Appeals is part of the Office of Hearings and Appeals which is a component of the Office of the Secretary of the Interior. It is authorized to hear, consider, and determine matters within the jurisdiction of the Department of the Interior involving hearings, appeals, and other review functions of the Secretary of the Interior. 43 C.F.R. § 4.1; see also United States v. Jones, 106 I.B.L.A. 230, 246 (1988)
 
 
 [1]
 The statute 43 U.S.C. § 687a was repealed effective October 21, 1986 by the Federal Land Policy and Management Act of 1976, Pub.L. No. 94-579, § 703(a), 90 Stat. 2743, 2789-91 (1976). It was in effect, however, during all of the events relevant to this case
 
 
 [2]
 In 1946, Congress abolished the General Land Office and the offices of Commissioner of the General Land Office and transferred their functions to the newly created BLM. Reorganization Plan No. 3 of 1946, § 403, 60 Stat. 1097, 1100 (1946)
 
 
 [3]
 Section 10 of the 1898 Act further provides:
 "That all claims substantially square in form and lawfully initiated, prior to January twenty-first eighteen hundred and ninety-one [the 1891 Act], may be perfected and patented upon compliance with the provisions of said Act, but subject to the requirements and provisions of this Act...."
 Ch. 299, 30 Stat. 413 (1898).
 
 
 [4]
 A complete version of the receipt appears in the Court of Appeals' decision in the case:
 "[I]n connection with Hd. Final, Serial No. 1088, for [describing land] 71.25
 acres at 1.25 per acre, $______.
 Fees
Commissions ............................................................. $1.76
Testimony fees, etc....................................................... 1.25
 ------------------------------
 $3.01
Less com's suspended in official mys. (moneys) ............................ 1.76
 ------------------------------
 $1.25
 "C.J. Greene, Receiver of Public Moneys."
 Stockley v. United States, 271 F. 632, 634 (5th Cir.1921).